IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL T. CHRISLEY and )
JULIE H. CHRISLEY, )
     )
    Plaintiffs, )
     )
     )          **Civil Action No. _____**
v. )
     )
JOSHUA WAITES, )
     )
    Defendant. )
     )

## COMPLAINT

Plaintiffs Michael T. Chrisley and Julie H. Chrisley (the "Chrisleys") hereby file their Complaint against Defendant Joshua Waites as follows.

## INTRODUCTION

This case is a shocking example of how an out-of-control public servant can abuse his office and violate the rights of innocent citizens for reasons that have more to do with securing publicity and money for his office than with enforcing the law. In recent years, Joshua Waites ("Waites") has used the power of his office as Director of the Georgia Department of Revenue's Office of Special Investigations to threaten prosecution against numerous individuals and businesses on dubious tax-evasion claims. Often these threats are used as leverage in civil

7625920.1

asset forfeiture actions promoted and/or scripted by Waites and prosecuted by some district attorneys in the State.  For instance, in at least one judicial circuit, Waites's Office of Investigations has been given at least two million dollars for his "assistance" in forcing "settlements" in these types of cases. Additionally, Waites has personally sought the media spotlight for "busts" he has made in these types of actions that he has shared through social media and other avenues.

A number of years ago, Waites began to focus his efforts and desire for media attention on the Chrisley family—in particular, on Michael T. Chrisley, a prominent television personality.  Waites began to aggressively pursue and prosecute bogus tax evasion claims against the Chrisleys, specifically targeting Michael Chrisley's estranged daughter, Lindsie Chrisley Campbell, in an effort to induce her to reveal compromising information about her family. Despite the fact that she had no such information, and perhaps because of it, Waites persisted, pursuing an increasingly aggressive relationship with Lindsie, in which he improperly shared the Chrisleys' confidential tax and other information with her in an effort to gain her trust or to intimidate her into cooperation.  Ultimately Waites's efforts failed, but in the process, the Chrisleys were forced to incur substantial personal and financial hardship.

## THE PARTIES

1.      The Chrisleys are residents of the State of Tennessee, and they currently reside in Nashville, Tennessee. In addition to being successful real-estate developers and entrepreneurs, they are the stars of an extremely successful and popular reality-TV series, "Chrisley Knows Best," which has been broadcast on the USA Network since 2014.

2.      Defendant Joshua Waites is a resident of the State of Georgia, and he is the Director of the Georgia Department of Revenue's Office of Special Investigations, acting at all times relevant to this lawsuit under color of state law. Defendant is subject to the jurisdiction of this Court and may be served with process at his place of business, 1800 Century Boulevard, Atlanta, Georgia 30345.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 26 U.S.C. § 7431.

4.      Venue is proper because Defendant resides within the Northern District of Georgia.  See 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

5.      Defendant joined the Georgia Department of Revenue ("GDOR") in 2013 and is currently the Director of GDOR's Office of Special Investigations.

3

6.     In his role at GDOR, Defendant has attempted to, and has, regularly garnered substantial media attention for GDOR's enforcement activities, including in news reports and social media postings.

7.     Defendant has further used GDOR Office of Special Investigations' investigative power and authority to market cases to various law enforcement agencies and district attorneys throughout the State of Georgia with the goal of soliciting and receiving proceeds from civil asset forfeitures derived from these matters.

8.     For instance, from around May 2014 through September 2018, Defendant secured over $2.2 million paid to the GDOR Office of Special Investigations from the District Attorney's office for the Macon Judicial Circuit alone.  While the precise account into which these monies were deposited is currently unknown, and while it is currently unknown how these funds were utilized by Defendant or the GDOR Office of Special Investigations, it does not appear the monies were paid either to the State of Georgia's General Fund or to the GDOR itself.  Instead, it appears those funds, and others likely secured from other civil asset forfeitures, were utilized solely for Defendant's GDOR Office of Special Investigations.

9.    Defendant's efforts to secure publicity and money for his Office of Special Investigations continued from 2014 through the present.  In or around 2017, Defendant began an investigation of the Chrisleys' purported tax obligations to the State of Georgia for the years 2009 through 2016.  At around the same time, starting in February 2017, a series of news stories were broadcast on Atlanta television station WSB-TV citing unnamed "sources" to the effect that Michael T. Chrisley "likely evaded state income taxes in Georgia."

10.    During that investigation, Defendant worked with the federal government, which provided him access to confidential tax information set forth or disclosed in reports or returns or other return information the Chrisleys had submitted to the GDOR and/or to the Internal Revenue Service (hereafter, "the Chrisleys' Tax Information").

11.    In addition, upon information and belief, Defendant was privy to certain federal grand jury information.

12.    Apparently, in an effort to raise his profile, and consistent with his prior efforts to do so, Defendant began using and disclosing the Chrisleys' Tax Information and other confidential information to coerce one or more of the Chrisleys' children to provide assistance in his investigation into the Chrisleys. In

particular, he targeted Lindsie Chrisley Campbell, Michael T. Chrisley's estranged eldest daughter.

13.    Among other things, Defendant told Lindsie Chrisley that not only were the Chrisleys subject to audit, but that Lindsie Chrisley, her siblings, her grandmother and her husband were also subject to being audited without notice.

14.    Among other means, Defendant's disclosure of the Chrisleys' Tax Information and other confidential information occurred in a series of text messages Defendant sent to Lindsie Chrisley Campbell.  See Text Messages attached as **Exhibit A.**

15.    In one such text message Defendant disclosed the following: "So the IRS completed there [sic] audit for the criminal side and then turned over the returns to us so we could bill them as well.  The Feds are pushing it because they are saying the 75 million deal is for real …".  Lindsie Chrisley Campbell responded, "Wow.  So what will they do.  Are they trying to shut it down".  Defendant responded, "But it's a production deal to do like 3 different shows.  So it's not like they are getting 75 million".

16.    In another text message, Defendant disclosed: "So. Some stuff happened today.  And we have a meeting the first of the year that is super big.  And is all about todd.  Like serious.  So.  I want to know if you would be willing to

6

talk about him or her". Lindsie Chrisley Campbell responded, "What is it in regards to". Defendant responded, "What do you think. So. It will be a Fed and state meeting hosted by the Feds".

17. In another text message Defendant states, "Hahah. They are gonna need a different attorney than they are used to". Lindsie Chrisley Campbell responded, "This is just really bad I might be sick". Defendant responded, "You knew this Day May come".

18. Defendant also disclosed to Lindsie Chrisley Campbell that her parents were under investigation for allegedly lying about their residency in the State of Georgia.

19. Defendant also disclosed to Lindsie Chrisley Campbell that a levy was placed on her parents.

20. Defendant also disclosed to Lindsie Chrisley Campbell that the federal government had subpoenaed the state for, and received, her parents' records, after which the state's investigation into her parents had been halted.

21. Defendant also disclosed to Lindsie Chrisley Campbell that the federal government was going to Nashville to take everything of value from her parents' home.

22. This information clearly and expressly related to the Chrisleys' Tax Information, which Defendant learned through his position with the GDOR and through his contacts with the federal government.

23. Defendant also disclosed to Lindsie Chrisley Campbell that GDOR agents under Defendant's supervision and control brought a dart board or punching bag into the GDOR on which they had affixed a photograph or other representation of Todd Chrisley's face at which the agents threw darts or punches. Defendant sent Lindsie Chrisley Campbell a photograph of such dart board or punching bag.

24. Defendant also disclosed to Lindsie Chrisley Campbell information regarding other cases, raids, and arrests in which Defendant was involved unrelated to the Chrisleys, including photographs Defendant took of such raids and arrests, prior to the publication of such information.

25. Defendant's communications with Lindsie Chrisley Campbell extended over a period of at least 18 months, during which time Defendant also discussed his personal life and his family with her and sent her photographs of his children.

26. The Tax Information Defendant divulged and disclosed to Lindsie Chrisley Campbell constitutes confidential information within the meaning of O.C.G.A. § 48-7-60 and 26 U.S.C. § 6103.

8

27.     Defendant's disclosure of the Chrisleys' Tax Information and other confidential information to Lindsie Chrisley Campbell was not authorized by judicial order or otherwise authorized by law.

28.     Under federal and state law, disclosure of a person's confidential tax information is a serious matter.  Indeed, the GDOR Personnel Policy Manual's Policy 110, addressing "Confidentiality and Unauthorized Access of Tax Information," states:

> Tax information submitted, compiled and recorded in the Department of Revenue is strictly confidential.  State law provides that both personal and corporate taxpayer information shall be kept absolutely secret.  Under Federal law, willful unauthorized access or inspection of any taxpayer records ... is a misdemeanor punishable by loss of job, fines, and possible prison terms.  Furthermore, it is the policy of the Department of Revenue that willful ... disclosure of any Federal or state taxpayer information maintained on a computer is prohibited. Therefore, Revenue Department employees are individually responsible for maintaining this confidentiality. ... Access to tax information for curiosity or personal reasons is strictly prohibited.

29.     The GDOR Personnel Policy Manual further states:

> 2.1     It is the responsibility of every employee of the Department of Revenue to become informed of the confidentiality code and the rules regarding the handling of tax information.  Only the division director or other specified authority may approve the release of tax information for which the division is responsible.  Whenever there is the slightest doubt as to the legality or propriety of releasing any tax information, the matter shall be referred to the Revenue Commissioner's Office.

30. In signing and acknowledging the GDOR Personnel Policy Manual and the GDOR's other policies, GDOR employees, including Defendant, are required to acknowledge "[t]he mishandling of tax information is a crime punishable by imprisonment or fine or both, and any person having knowledge of mishandling of tax information and not reporting this knowledge to the Division Director is as guilty in the eyes of the law as the person committing the crime. It is our policy to prosecute to the fullest extent of the law anyone found guilty of mishandling tax information."

## COUNT I

### VIOLATION OF 26 U.S.C. § 6103

31. The Chrisleys hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

32. Defendant accessed, obtained, inspected, and/or knowingly or negligently disclosed to Lindsie Chrisley Campbell and potentially others return or return information with respect to the Chrisleys in violation of 26 U.S.C. § 6103(a). As used herein, the terms "return" and "return information" are defined as in 26 U.S.C. § 6103(b).

33. Defendant's knowing and willful inspection and disclosure to Lindsie Chrisley Campbell and potentially others of return or return information with

respect to the Chrisleys make him liable to the Chrisleys, pursuant to 26 U.S.C § 7431(a)(2), for damages as provided in 26 U.S.C. § 7431(c), including punitive damages and costs of this action.

## COUNT II

### CLAIM UNDER O.C.G.A. § 51-1-6 FOR BREACH OF DUTY UNDER O.C.G.A. § 48-7-60

34.    The Chrisleys hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

35.    As an officer, employee, and/or agent of the GDOR, Defendant had a specific and mandatory duty under O.C.G.A. § 48-7-60 not to divulge or make known in any manner (a) information set forth or disclosed in reports or returns the Chrisleys submitted to the GDOR and (b) return or return information received from the Internal Revenue Service or submitted by the Chrisleys in accordance with the Internal Revenue Code.

36.    By divulging the Chrisleys' Tax Information to Lindsie Chrisley Campbell or otherwise making it known to her and potentially others, Defendant violated his statutory duty under O.C.G.A. § 48-7-60 to maintain the confidentiality of the Chrisleys' Tax Information.

37.    As the persons who submitted the Tax Information to the GDOR and to the Internal Revenue Service that Defendant divulged to Lindsie Chrisley

11

Campbell and potentially others, the Chrisleys are in the class of persons the statutory duty under O.C.G.A. § 48-7-60 was intended to protect.

38. The Chrisleys have suffered the type of harm the statutory duty under O.C.G.A. § 48-7-60 was intended to guard against, namely the unlawful disclosure of their confidential Tax Information.

39. Defendant's breach of his statutory duty under O.C.G.A. § 48-7-60 caused the Chrisleys injuries for which they are entitled to recover damages from Defendant pursuant to O.C.G.A. § 51-1-6.

## COUNT III

### CLAIM PURSUANT TO 42 U.S.C. § 1983

40. The Chrisleys hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

41. The Chrisleys have the right guaranteed to them by 26 U.S.C. §§ 6103(a) and 7213(a) to the confidentiality of their returns and return information.

42. Defendant, acting at all times under color of state law, obtained the Chrisleys' returns or return information in connection with his service as an officer and/or employee of the GDOR.

43.     Defendant, acting at all times under color of state law but outside the scope of his official duties for the GDOR, disclosed to Lindsie Chrisley Campbell and potentially others the Chrisleys' returns or return information.

44.     Defendant's actions were intentional, willful, and malicious and/or with deliberate indifference to the Chrisleys' rights, and the Chrisleys have been injured as a direct and proximate result of Defendant's actions.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45.     The Chrisleys hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

46.     Defendant's unlawful disclosure of the Chrisleys' Tax Information to Lindsie Chrisley Campbell and potentially others, as described above, was intentional and without legitimate purpose.

47.     Defendant's conduct was extreme and outrageous.

48.     Defendant's conduct was specifically intended to and did in fact cause the Chrisleys severe emotional distress, anxiety, and mental anguish.

49.     The Chrisleys are entitled to recover damages from Defendant in an amount to be determined at trial.

13

## COUNT V

## ATTORNEYS' FEES UNDER 42 U.S.C. § 1988

50.    The Chrisleys hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

51.    The Chrisleys are entitled to an award of the attorneys' fees and expenses they have incurred as a result of Defendant's violations of their rights guaranteed by U.S. law as set forth above, pursuant to 42 U.S.C. § 1988.

## COUNT VI

## ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11

52.    The Chrisleys hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

53.    Defendant has acted in bad faith, been stubbornly litigious, and caused the Chrisleys unnecessary trouble and expense.

54.    The Chrisleys are entitled to an award of the attorneys' fees and expenses they have incurred, pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, the Chrisleys respectfully pray this Court issue the following relief:

a.    That the Chrisleys be awarded all compensatory, general, and special damages permitted by law;

b.     That the Chrisleys be awarded punitive damages as allowed by 26 U.S.C. § 7431(c);

c.     That the Chrisleys be awarded their expenses of litigation, including reasonable attorneys' fees, plus other costs of this action;

d.     A trial by jury on all issues so triable; and

e.     Any additional relief this Court deems just and proper.

Respectfully submitted this 15th day of October, 2019.

> */s/* **Michael J. Bowers**
> Michael J. Bowers
> Georgia Bar Number 071650
> mbowers@balch.com
> Christopher S. Anulewicz
> Georgia Bar Number 020914
> canulewicz@balch.com
> Jonathan R. DeLuca
> Georgia Bar Number 228413
> jdeluca@balch.com
> **BALCH & BINGHAM LLP**
> 30 Ivan Allen Jr. Blvd. N.W., Suite 700
> Atlanta, GA 30308
> Telephone: (404) 261-6020
> Facsimile: (404) 261-3656
>
> *Attorneys for Plaintiffs*